IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| MARCIA RILEY, Individually and as Representative of the Estate of MARCUS NYGEL ELLIOT<br><br>Plaintiffs,<br><br>VS.<br><br>LIEUTENANT SHARON SHEELY, et al.<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§ Case No. 4:09cv425<br>§<br>§<br>§<br>§<br>§ |

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

Marcia Riley ("Plaintiff") brings the present suit in her individual capacity and in her capacity as representative of the estate of Marcus Nygel Elliot ("Elliot"). Elliot died after a struggle with and being restrained by officers at Collin County Jail. Plaintiff has named both individual officers ("Individual Defendants" or "Deputy Defendants") and Collin County, via several of its government agencies, as Defendants in the suit.

According to the pleadings, while Elliot was in custody at Collin County Jail, an officer and an attending nurse noticed Elliot in his cell with a string around his neck and, according to the pleadings, "did not look good and his face appeared darker." According to the Complaint, Plaintiff takes the position that Mr. Elliot was calm after the string was taken off his neck. However, the Plaintiff goes on to allege that the according to the statements of Lt. Sheely, Elliot was combative. Four officers entered Elliot's cell to restrain him, and, according to Plaintiff, he did not resist. Individual Defendant Lieutenant Sheely called for a restraint bed and additional officers and secured Elliot to the bed. Plaintiff alleges that, despite Elliot's obvious distress, Defendant Sheely called for

1

yet more restraints, including a restraint that would prevent Elliot from breathing, and tightened these restraints despite objections by the nurse on duty. Shortly thereafter, Elliot died of asphyxiation.

Plaintiff alleges that the officers involved including Lt. Sheely violated numerous provisions of the County's Jail Policy and Procedure Manual. Plaintiff also alleges that the County failed to provide adequate training and supervision of the officers on duty the day that Elliot died. Particularly, Plaintiff alleges that the officers were not trained in the safe and effective use of a spit mask, restraints or helmet, all of which were utilized in subduing Elliot. Plaintiff also alleges that use of restraint was "routine" in the facility and that this indicates an indifference to Elliot's constitutional rights. Plaintiff alleges that the officers involved acted willfully, deliberately, maliciously or with reckless disregard for Elliot's established constitutional rights.

Plaintiff alleges that Sheely and the other officers involved violated the County's Jail and Policy Manual 420.060(a) dealing with restraints to mentally impaired inmates. This policy deals with risk of positional restraint asphyxia. There is no allegation that Elliot was mentally impaired. According to the Plaintiff, Elliot's attempts to breathe may have been interpreted as struggling which the manual describes.

The Individual Defendants and the County have moved for judgment under Fed. R. Civ. P. 12(c). A Motion for Judgment on the Pleadings under Rule 12(c) is subject to the same standard as a Motion to Dismiss under Rule 12(b)(6). *Doe v. MySpace, Inc*. 528 F.3d 413, 418 (5th Cir.), *cert. denied*, 129 S. Ct. 600, 172 L. Ed. 2d (2008). Thus, the "inquiry focuses on the allegations in the pleadings" and not on whether the "plaintiff actually has sufficient evidence to succeed on the merits." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 782 (5th Cir. 2007). The Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Guidry v. American*

*Public Life Ins.Co.*, 512 F.3d 177, 180 (5th Cir. 2007). Yet under the *Twombly* pleading standard, the plaintiff must plead enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

Plaintiff alleges that the officers acted wilfully, deliberately, maliciously, or with reckless disregard for Elliot's clearly established constitutional rights. They were wilfully indifferent to the risks and dangers related to the use of the restraint and used unreasonable and unnecessary force and ignored safety precautions. Further, Plaintiff says the officers received training on how to avoid restraint related asphyxiation but violated numerous provisions of the Jail Policy and Procedure Manual. They in effect ignored their training and such was indifference to the health and safety of Elliot. Deliberate indifference is "more blameworthy than negligence" but less blameworthy than purposeful harm. *See Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The standard is a "stringent" one. *Southard v. Tex. Bd. of Crim. Justice*, 114 F.3d 539, 551 (5th Cir. 1997).

A local government entity may be sued "if it is alleged to have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *City of St. Louis v. Praprotnik,* 485 U.S. 112, 121, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (quoting *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 690, 98 S.Ct. 2018, 56 L. Ed. 2d 611 (1978)). Alternatively, liability may attach where the constitutional deprivation is pursuant to a governmental custom, even if such custom has not received formal approval. *Monell,* 436 U.S. at 690-91, 98 S.Ct. 2018. Liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom. *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir.)

(citation omitted), *reh'g en banc denied*, 251 F.3d 159 (5th Cir.) *and cert. denied*, 534 U.S. 820, 122 S. Ct. 53, 151 L. Ed. 2d 23 (2001). As for the county for liability to attach in a Section 1983 action based on an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective. *See Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010), *petition for cert. filed*, - - U.S.L.W. - - - - (U.S. Feb. 14, 2011) (No. 10-1036). To prevail on a "failure to train theory" a plaintiff must demonstrate: (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question. *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009).

Fourteen individuals are named in the complaint but only two are specifically mentioned, Cook and Sheely. The Individual Defendants have raised the defense of qualified immunity. The qualified immunity defense has two prongs: whether an official's conduct violated a constitutional right of the plaintiff; and whether the right was clearly established at the time of the violation. *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). A court may rely on either prong of the defense in its analysis. *Id.*; *see also Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009) (receding from the rigidity of the rule as articulated in *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were "objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins v. Ainsworth,* 382 F.3d 529, 537 (5th Cir. 2004) (citations omitted). To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates

that right. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008). The unlawfulness of the defendant's actions must have been readily apparent from sufficiently similar situations, but it is not necessary that the defendant's exact acts have been illegal. *Id.* at 236-37. In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper. *Babb v. Dorman,* 33 F.3d 472, 477 (5th Cir. 1994). "Where, as here, a section 1983 defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden 'to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.'" *Salas v. Carpenter,* 980 F.2d 299, 306 (5th Cir.1992). "We do 'not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.'" *Id.* Qualified immunity protects public officials "not simply from liability, but also from standing trial." *Johnson v. Jones,* 515 U.S. 304, 312, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). In other words, qualified immunity "means immunity from suit, not simply immunity from liability." *Foster v. City of Lake Jackson,* 28 F.3d 425, 428 (5th Cir.1994) (internal quotation omitted). To that end, "[w]hen a public official pleads the affirmative defense of qualified immunity in his answer, the district court may ... require the plaintiff to reply to that defense in detail. By definition, the reply must be tailored to the assertion of qualified immunity and fairly engage its allegations." *Schultea v. Wood,* 47 F.3d 1427, 1433 (5th Cir.1995). The Fifth Circuit also directs that the trial court should examine each individual defendant's entitlement to the qualified immunity test. *See Smith v. Penningtom*, 314 Fed. Appx. 745, 746-47 (5th Cir. 2009) (per curiam). However, the problem is that although fourteen officers are sued only two are identified in the body of the Complaint and the Rule 7 response is no more helpful. Plaintiff merely lumps all officers together even when it appears from the Complaint

5

and response that not all officers entered the cell. The Plaintiff has simply failed to furnish enough information as to all the officers except Lt. Sheely to overcome the qualified immunity defense.

Plaintiff states that the first claim as to the officers is that the Deputy Defendants failed to adhere to the County's policies and procedures and showed deliberate indifference to Elliot during the restraint. The second claim is that they used excessive force. To determine the appropriate standard to apply in analyzing constitutional challenges by pretrial detainees, the court must first classify the challenge as an attack on a condition of confinement or as an episodic act or omission. *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir. 1996) (en banc). A condition of confinement case is a constitutional attack on general conditions, practices, rules, or restrictions of pretrial confinement. *Id*. In such cases it is assumed by the municipality's promulgation and maintenance of the complained of condition, that it intended to cause the alleged constitutional deprivation. *Flores v. County of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir.) (citations omitted), *reh'g en banc denied*, 132 F.3d 1458 (5th Cir. 1997). If the complained of harm is a particular act or omission of one or more officials, then it is characterized as an episodic act case. *Id*. As noted above the detainee must then show that the officials acted with subjective deliberate indifference. To hold the municipality liable, the detainee then must show that his clearly established constitutional rights were violated with subjective indifference and that the violation resulted from a municipal policy or custom adopted or maintained with objective deliberate indifference. *Id*. (citations omitted). Plaintiff contends that she has expounded facts about how each of the deputy defendants violated Elliot's pre detainee's right to protection under the Eighth and Fourteenth Amendments. For an official's episodic act to violate a pretrial detainee's "constitutional right to be secure in his basic human needs, such as medical care and safety," the plaintiff must demonstrate that "the official actor

failed to act with deliberate indifference to the detainee's needs." *Hare*, 74 F.3d at 647-48. "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 381 (5th Cir. 2005) (citations omitted). To show subjective deliberate indifference, a plaintiff must present evidence: (1) that each defendant had subjective knowledge of "facts from which an inference of substantial risk of serious harm could be drawn," (2) that each defendant actually drew that inference; and (3) that each defendant's response to the risk indicates that he or she "subjectively intended that harm occur." *Tamez v. Manthey*, 589 F.3d 764, 770 (5th Cir.2009) (per curiam) (quoting *Thompson v. Upshur County, Texas*,245 F.3d 447, 458-59 (5th Cir. 2001)).

In this framework, the Court addresses the individual officers' liability save that of Lt. Sheely. Here, Plaintiff has not shown that the remaining Deputy Defendants violated any policies as to Elliot. There is no pleading that he was an at risk inmate contemplated by the County's Manual or that the officers had reason to suspect that he was. In fact, the pleadings indicate that the officers intervened when it became apparent that Elliot was in distress with a string around his neck. There is no pleading that anyone other than Elliot tied a string around his neck. There is no pleading that anyone put Elliot on the floor with a string around his neck. It goes without saying that Elliot was attempting suicide and the officers responded. There are simply no facts which allege either that Elliot was "at risk" or that any of the deputy defendants involved knew he was "at risk." As such there are no pleaded facts which would indicate that the Deputy Defendants drew the inference of risk of serious harm or that they subjectively intended for harm to occur. Further, as plaintiff has alleged, once medical distress was noted, immediate medical care was undertaken including attempts

to resuscitate Elliot. The provision of such care upon a finding of medical distress does not support a claim of deliberate indifference. *Herrin v. Treon*, 459 F. Supp. 2d 525, 540 (N.D.Tex. 2006). The Constitution only requires that the Deputy Defendants not maliciously and sadistically seek to cause Elliot harm. No facts are pleaded as to these Defendants to give rise to a viable or plausible claim for excessive force under the Fourteenth Amendment.

Further, there has been no showing by Plaintiff that the Deputy Defendants were not objectively reasonable. The Defendants had no notice of any condition of Elliot that would place him at higher risk of suffering positional asphyxia. Further, if the officers had done nothing when Elliot was discovered lying on the floor with a string around his neck, they would have been liable for failing to protect him. Jail officials must adequately protect pre trial detainees from their known suicidal impulses. *See Hare*, 74 F.3d at 650. As to all officers except Lt. Sheely, Plaintiff has simply failed to meet her burden.

As to Lt. Sheely, Plaintiff pleads that she was warned by the nurse on duty that the restraints were too tight. The complaint alleges that Lt. Sheely ignored the warning and ordered more restraints. Given the limited measure of review available to the Court, Plaintiff has pleaded a plausible claim against Lt. Sheely. This claim will survive a Motion for Judgment on the Pleadings; whether it could survive a Motion for Summary Judgment is outside the scope of this report and recommendation.

As to the Plaintiff's claim against the County, it is well established that a county is not liable under § 1983 on the theory of *respondeat superior*. *Monell*, 436 U.S. at 694, 98 S.Ct. 2018. A municipality is liable only for acts directly attributable to it "through some official action or imprimatur." *Piotrowski*, 237 F.3d at 578. As to the three prong approach assessing municipal

liability, the existence of a policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority. *Burge v. St. Tammany Parish,* 336 F.3d 363, 369 (5th Cir.2003), *cert. denied*, 540 U.S. 1108, 124 S. Ct. 1074, 157 L. Ed. 2d 895 (2004). "[A] single decision by a policy maker may, under certain circumstances, constitute a policy for which a [municipality] may be liable." *Brown v. Bryan County,* 219 F.3d 450, 462 (5th Cir.). *reh'g and reh'g en banc denied*, 235 F.3d 450 (5th Cir. 2000) *and cert. denied*, 532 U.S. 1007, 121 S. Ct. 1734, 149 L. Ed. 2d 658 (2001). However, this "single incident exception" is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker. *Bolton v. City of Dallas,* 541 F.3d 545, 548 (5th Cir. 2008) (per curiam) (citing *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir.2005)), *cert. denied*, 129 S. Ct. 1669, 173 L. Ed. 2d 1036 (2009). Under the second prong, "[a]ctual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir.1984) (en banc) (per curiam); *see also Piotrowski,* 237 F.3d at 579. A municipal policymaker is someone who has "the responsibility for making law or setting policy in any given area of a local government's business." *Praprotnik,* 485 U.S. at 125, 108 S.Ct. 915. "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Whether an official possesses final policymaking authority for purposes of municipal liability is a question of state and local law. *Id.* at 482, 106 S.Ct. 1292. The third prong requires a plaintiff to prove "moving force" causation. To succeed, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct

9

causal link between the municipal action and the deprivation of federal rights." *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

There has been no showing that Lt. Sheely is a decision maker or that such authority was delegated to her. The only policy cited is that relating to restraints on persons who have some mental incapacity. Nevertheless, the Plaintiff does not argue that such policy, if even remotely applicable, is unconstitutional. According to the pleadings, Lt. Sheely's act was arguably the "moving force" behind the alleged constitutional violation (excessive restraint) that resulted in his death. But because the decision to apply more restraints was not a decision by a final policymaker of the County, the County is not liable on that ground. As to the failure to train, a plaintiff must show that (1) the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a "moving force" in causing violation of the plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy. *See, e.g., Sanders-Burns v. City of Plano,* 594 F.3d 366, 381 (5th Cir.2010); *Pineda v. City of Houston*, 291 F.3d 325, 332 (5th Cir. 2002), *cert. denied*, 537 U.S. 1110, 123 S. Ct. 892, 154 L. Ed. 2d 782 (2003). The Plaintiff must also establish a "direct causal link" between the municipal policy and the constitutional injury. *See Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (citations omitted), *petition for cert. filed*, 79 U.S.L.W. 3377 (U.S. Dec. 14, 2010) (No. 10-801). The existence of a constitutionally deficient policy cannot be inferred from a single wrongful act. *O'Quinn v. Manuel*, 773 F.2d 605, 610 (5th Cir. 1985 (citing *City of Oklahoma v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)). Plaintiff in this case must allege that an unconstitutional custom, policy or practice of the County was the moving force behind either the malicious and sadistic use of force by the individual officers for the very purpose of causing harm or behind the officers's deliberate indifference to Elliot's safety

and /or medical needs. *Hare, supra*, 74 F.3d at 647-48. As for training, Plaintiff makes no allegations that the training procedures were constitutionally inadequate. *See Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996). Moreover, Plaintiff fails to plead that the Sheriff as policymaker, in his role leading the Collin County Jail, acted with deliberate indifference sufficient to state a claim. Here, the Plaintiff pleads that there was a policy in force but that the officers ignored it. On the other hand, Plaintiff pleads the officers were not trained in the safe and effective use of a spit mask, restraints, and /or helmet.

There is also an allegation that the County failed to properly supervise the officers. To hold a county liable for failing to supervise an officer, a plaintiff must prove that the county supervised its employees in "a manner that manifests deliberate indifference to the constitutional rights of citizens." *Southard*, 114 F.3d at 551. A Plaintiff must show that : (1) the supervisor failed to supervise; (2) a causal link exists between the failure to supervise and the violation of rights; and (3) failure to supervise amounts to deliberate indifference. *See Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cr. 1998). The Plaintiff has only alleged the barest conclusory statement and fails to plead as necessary. Moreover, there is no causal link alleged between the supervision of the involved officers and Elliot's death.

Neither has the Plaintiff alleged an unconstitutional custom of excessive force because she has pleaded no facts by which it could be inferred that the policy maker of the County, i.e. the Sheriff, maintained this alleged custom with deliberate indifference to its known or obvious consequences. *Johnson v. Deep E.Tex.Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004). The Complaint lacks any factual allegations by which it could be inferred that the Sheriff had any knowledge of a custom of excessive force which would lead to Elliot's death, much

less that he drew the inference that such a death was possible due to that custom. *See James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009), *cert. denied*, 130 S. Ct. 1078 (2010). Moreover, no facts are alleged relating to any sort of causal link between a County policy and Elliot's death. Here, the allegation seems to focus squarely on Lt. Sheely's decision to add more restraints, an individual decision, not one fostered by custom.

The County also alleges that it is immune from suit on Plaintiff's negligence claim and that the Plaintiff failed to give proper notice of her claim. This is not a matter resolved on a Motion for Judgment on the Pleadings. The Court also declines to exercise its supplemental jurisdiction over the remaining state claims in that such claims are best resolved in a state setting. *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989). Although the defenses of qualified immunity under federal law and official immunity under state law are similar, they are not the same. *See Newman v. Kock*, 274 S.W.3d 697, 705 (Tex. App.-San Antonio, 2008, no pet.).

It is recommended that the County and Individual Defendants' Motions for Judgment on the Pleadings be granted except as to Lt. Sheely, which be denied. It is further recommended that all state claims against the Defendants except Sheely be dismissed without prejudice. The only issues before the Court are whether Lt. Sheeley violated Elliot's Section 1983 rights and whether she was negligent.

## RECOMMENDATION

The Deputy Defendants' Motion for Judgment on the Pleadings Premised on Qualified Immunity (Dkt. 43) should be GRANTED in part and DENIED as to the claims against Lt. Sheely. Defendant Collin County's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(c) (Dkt. 44) should be GRANTED. The Court has issued its report and recommendation without the need

for an oral hearing, therefore Plaintiff's Motion for Hearing (Dkt. 60) is DENIED. The Court did not consider the evidence attached to the County's motion to dismiss, therefore Defendants' Motion to Strike Improper Evidence (Dkt. 56) is DENIED as MOOT.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 1st day of March, 2011.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE